IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS
FEB 25 2015
DAVID J. MALAND, CLERK
BY
DEPUTY

Charles D. Raby

v. Civil No.9:13-cv-00120

Paul Tolly, et al

PLAINTIFFS MEMORANDUM IN RESPONSE TO DEFENDANTS MOTION FOR SUMMARY JUDGEMENT

Plaintiff asks the court to deny defendants motion for summary judgement.

A.INTERDUCTION

1.Plaintiff is Charles D.Raby: Defendants are Paul Tolly and Terry Valentine

2.Plaintiff sued Defendants and brings this civil action under U.S.42 § 1983 for excessive force and failure to protect. A 8th Amend Violation.

3.This court issued an ORDER to respond and disclose ALL relevant information on October 2,2013. Which Defendants still have not fully done.

4. to this date,Plaintiff still has not received all of the DVDs in the possession of defendants attorney Mrs Afton Trevino. She is still in possession of a 4th DVD that Plaintiff still wants to view. So by refusing to allow Plaintiff the chance to view the 4th and final DVD,she is making it to where plaintiff cannot properly respond to their Summery Judgement.

5. The Defendants are now asking the court to grant their summary judgement. "A genuine issue of these material facts exist,and must be allowed to be concidered be a trier-of-fact at trial.

Preliminary Statement

On dec 29,2012, Plaintiff was being escorted to F-pod and down graded for a false allegation of a rule violation, ('drinkinging homemade alcholo in the day room). As plaintiff was being escorted to F-pod, he stops in the hallway requesting to speak to Lt Pauly Tolly. Tolly arrives and tells plaintiff that he is going to f-pod and that is the end of it, plaintiff again tries to ask Tolly to review the video footage of him in the dayroom, and he will clearly see that it was not 'alcholo' he was drinking but instead a orange drink he was allowed to carry with him to the dayroom. Tolly flat out tells Plaintiff he is not going to do that and he will have to take it up with classification. As everyone is heading towarded F-Pod, Sgt Terry Valentine tells Plaintiff to stop crying 'like a bitch'. At this time admittedly plaintiff out of anger of being falsely accused of drinking alcholo in the dayroom and being called a bitch,makes an attempt to kick Tolly, Tolly blocks

the kick and then CO Arron Floyd comes from behind plaintiff, grabing him in a reverse bearhug and takes plaintiff to the floor. Floyd and Valentine then Roll Plaintiff onto his stomach as Valentine is at Plaintiffs waist area, and Floyd at Plaintiffs upper body shoulder area.
At this point the Use of force is successfully over. It is at this point that Lt Tolly, comes around to plaintiffs head,drops to his knees and with out cause starts to beat plaintiff in the face with a closed fist. As Floyd did nothing except only to turn his head away as if in shock of what he was witnessing Tolly do.
Tolly then stands up and walks behind plaintiff and leans up against '2'gate,plaintiff tells Tolly, he kicked him in the eye and he couldn't see. Tolly tells Plaintiff, 'I ain't done with you,I'm going tofucking kill you' he then comes back to plaintiffs head leans over and again repeatedly starts punching Plaintiff on the right side of his face with a closed fist,as floyd and Valentine did nothing to stop it. Tolly once again walks back behind Plaintiff. It is here plaintiff is unclear whom hit him next. But plaintiff was indeed struck a third time by someone on the right side of his face.
What plaintiff first thought were kicks to the face were in fact punches, in a honest mistake, Plaintiff had closed his eye once he saw a foot by his head. And that is when the punches started.
Plaintiff brings this law suit against TDCJ Officer Tolly for his malicious and sadistic use of excessive force and against Valentine for his deliberate indifference to the attack and threat of beating and death. A 8th Amend violation.

Defendants have moved for summary judgement arguing:
1. they are entitled to Qualified immunity.
Palintiff argues that they are not protected under qualified immunity because Tolly knew his conduct was a clear and direct violation of well established rules of TDCJ and Texas and federal laws that protect prisoners against crule and unusual punishment. The Defendants were not new correctional officer whom didn't know the rules. They were ranking officers who are trained in what is not allowed.
Dropping to ones knees and start punching a prisoner who is being held down by two full grown men each weighing over 220 pounds while that prisoner in handcuffed behind his back belly down to the floor making no futher attempt to harm anyone, can't be viewed as 'justifiiable' or that any he thought

his conduct was legal.

Therefore he does not qualify for qualified immunity.

Tolly claims that his sole reason was because Plaintiff was spitting and bit Floyd. This is absoluty fasle. Just another attempt to try and justify their actions. Video evidence will show, Plaintiff is not spitting or attempting to bite Floyd. And more so that he never made a attempt to bite Floyd. If the court looks closly at the DVD from the Surveillance footage, the court will see even before they successfully roll plaintiff onto his belly, Floyds elbow was nowhere near plaintiffs mouth. Then the court must look at the postion of Floyds Body, once Floyd and Valentine roll him onto his belly Floyds 'left' arm and more so, his elbow is on the TOP of plaintiffs 'left' shoulder. This makes it absolutly impossible for plaintiff to had bitten Floyd, (see photo of Floys elbow Ehhibit A.), those are not teeth marks, if plaintiff had to guess, he would say those are the 'teeth marks from "handcuffs"'.

Floyds body language is not the language of a person whom is being spit upon or bitten. Floyds only reaction is,as he witnesses Tolly beat Plaintiff is to 'turn his head away,in shock,or couldn't believe what he was seeing'. (see defendants Ex Surveillance DVD).

Futher more, Floyd never wrote a case for plaintiff disciplinary case for spitting or bitting him. Because it is absolutly untrue.

Tolly uses this as his 'justification' to beat the hell out of plaintiff. Surveillance Video that was sent as evidence is a mere 1 minute of a 23 minute ordeal. Which does not capture the next two assaults. Defendants had a duty to preserve the full 23 minute event, more so since plaintiffs criminal Attorney made a preservation request for FULL preservation of all surveillance footage. This means they should had recorded the whole 23 minutes, and let it coincide with the start of the Use of force video. By not preserving the full 23 minutes, they had destroyed relevant footage that would had shown just how plaintiff received the fist marks on the right side of his face, which was a result on the second attack. These fist marks didn't just magically appear on plaintiffs face. They were a result of Tolly coming back to plaintiff head a second time and leaning over him and repeatedly stricking him on the right side of face.

Tollys action prove that he does not meet the qualified immunity as no reasonable thinking person could believe these actions were legal.

Tolly was working under the color of law when he violated TDCJ, Texas and Federal rules and laws.

He should not qualify for 11th amendment immunity. He is being sued in his 'individual capacity'.

Plaintiff is not sueing the state. An 11th amendment does not apply to suits for money damages against state officials sued in their INDIVIDUAL CAPACITIES. (see hafer v Melo 502 U.S.21, 31, 112 S.Ct 358, 636, 116 L.2d 313 (1991) (holding that state officials when sued in their indiviual capacities, are 'persons' within the meaning of § 1983 and therefore are not immune under the 11th amendment). Tollys Actions violate U.S Con 8th Amendment crule and unsual punishment.

Valentine also attempts to seek to qualify for qualified immunity. In the first part of the surveillance video, plaintiff admitts, Valentine did everything right. Plaintiff cannot really argue his actions on the part that was preserved. It is the part of video that wasn't preserved that plaintiff believes that Valentine show his willingness in his failure to protect. Valentine clearly heard Tolly say he was 'not done with him, that he was going to kill him', he then witnessed Tolly return to plaintiffs head and beat plaintiff on the right side of his face with a closed fist. Once valentine heard Tolly make those threats,he had a duty to step in and by not doing so,this allowed Tolly to beat plaintiff agian. And possiblly a third time. valentine was fully aware of the threat Tolly Made,so he knew there was a subtantial risk to plaintiffs safety.

Valentine showed 'deliberate indifference' by faliing to intervene or at the very least tell him 'do not do that'.

Valentine futher ingaged in filing false incident and injury reports. Stating once again that plaintiff was spitting and bit Floyd, which is untrue. As footage will show.(See defendants Ex .G, surveillance DVD). Valentine also claims that plaintiff kicked him in the side of the head, (see photos of Valentines head Exhibit B),yet once again, surveillance footage will clearly show, plainitffs feet are nowhere near Valentines head. So it is evidnet this is a self inflicted injury. Footage shows Valentine Falling backwards and away from plaintiff. So the question remains, 'Just where did this injury come from?', it surely didn't come from plaintiff. Futhermore, Valentine never wrote plaintiff a disciplinary case for 'assaulting him', because it is untrue. (see defendants exhibit G."DVD")

Valentine was fully aware of Tollys intentions because Tolly stated them loud and clear. And yet Valentine did nothing.

Valentine does not qualifiy for qualified immunity since he was fully aware of tollys actions and intentions to cause Plaintiff harm. A U.S. Con 8th amendment Violation.

Once again,if the video would had been fully preserved as was requested, then it would show Tolly making good on his threat and Valentine and Floyd did nothing to stop it.

For the same reasons Tolly does not qualify for 11th amendment immunity, Valentine does not either. He is being sued in his individual capacity and a 'person' within the meaning of §1983 and therefore he is not immune from suit under the 11th amendment.

Plaintiff would also like to point out something about why he was being down graded from level 1 to a level 2,'the whole caught drinking "alcholo" in the dayroom'.

Plaintiff never received a case for this either. And here is why. When everything was said and done,they went back and reviewed the video footage of plaintiff in the dayroom and saw, plaintiff was in fact telling the truth, he was allowed to take a mint stick and two packs of a orange cool-aid to the dayroom with him, along with a see through water bottle containing water. Vidoe footage would had shown plaintiff stand at the dayroom table and mix this drink with half a mintstick, ~~in the surveillance DVD plaintiff was allowed to~~ into the water bottle. You can actually see half of the mintstick, in the surveillance DVD,plaintiff was allowed to take with him on the floor. (See Defendants ex.G Surveillance DVD) the reason why plaintiff was not written a case for this is, because:

1.It is absolutly untrue.

2. If they would had written the case,they would had had viewed the footage and it would had shown conclusivly he was telling the truth. And it would had had to been preserved.

Plaintiff would also point out to the court, althroughout every report made they make mention of plaintiff being caught with alcholo in the dayroom. Defendants had a duty to preserve that footage as well,The preservation request Plaintiffs criminal attorney made on his behalf was very clear. ALL footage related too the use of force. If defendants at every chance they get make mention of this false allegation of plaintiff drinking alcholo in the day

room , they had a duty to show this to be fact. It would one, show this to be true or untrue, two where he got it from, because he surely couldn't carry it with him as per 12 building policy, 'no offender shall carry anything to the dayroom without it first being inspected by guards, and the guards carry everything for the offender, when an offender leaves his cell going to the day room, he is in nothing but his boxer and a pair of shoes' yet there is not one shred of evidence to support this. There is no case, no footage, and there isn't even any pictures of the bottle.

Futhermore, Defendants bring up things he was never written up for, in an attempt to try and show the court their actions were justified.

1. There is no footage of plaintiff drinking alcholo in the day room.

2 no footage showing were plaintiff got this alledged alcholo from.

3.no case was written regarding this.

4. valentine never wrote plaintiff a assault case, but yet he makes a injury report stating plaintiff kicked him in the side of the head,a statment that video footage will not support.

5. Arron Floyd never wrote plaintiff a case for bitting him. Because it is clear to the naked eye, that is NO human bite mark. And video footage will show it is factully impossible for plaintiff to turn his head around in such away to cause that mark.

And it is that Tolly uses for his justification for immediately droping to his knees and begins beating the hell out of plaintiff with a closed fist. Plaintiff would ask the court that upon reviewing the footage, watch Tollys mouth to see if he is giving any commands. There is none.

6. Floyd never wrote a case for spitting.

These are serious allegations. All of which are untrue and the defendants attempt to justify their actions. None of which a disciplinary written.

In the fact finding investigation, Major V. McMullin said that he called nurse Curry to ask her if plaintiffs nose was broken. He states it was not. (see Plaintiffs Ex F.)

Nurse Curry has been a Nurse for well over 10 years and is more that qualified to read, and UNDERSTAND what she reads. By McMullin falsly stating plaintiffs nose wasn't broken,it wouldn't fall under listed as a 'serious injury', and therefore they wouldn't have had to report it to the Office of Inspector General. Who would have had to come to the Unit and investigate it, allowing

plaintiff a chance to tell the whole story, and then have OIG review the entire 23 minutes of footage from start to finish that would show Tolly walking behind plaintiff and returning to his head and beat him a second time, and who hit him that third time. And would have shown Valentine and Floyds deliberate indifference.

This complaint goes well beyound just Excessive force and deliberate indifference. There was a conspiracy to falsiy official government documents, by making false allegations and injury claims as well as Destroying relevant surveillance footage. AND the medical examination footage that Captian John Bloton and SGT Diana Shupak recorded of the next day when plaintiff was taken to medical on December 30,2012.

Then we have the altered DVD that Plaintiff told the court about The defendants seem not to have sent all the DVDs that plaintiff was allowed to View. Plaintiff was allowed to view a DVD of the audio Video Use Of Force, On 2-9-14 (see Defendants first supplement disclosure Exhibit A.)This was from the ones defendants attorney received from the UNIT. She,Mrs Trevino,received two DVds at this time. She only allowed plaintiff to view one.

then plainitff had a friend of his Merry Alice Wilkens Send a open records request to TDCJ General counsel requesting the DVDs. TDCJ general Counsel inturn forwarded the TWO DVDs they had to attonrey general Greg Abbott. This was how plaintiff was able to obtian access to the OTHER TWO DVDs. Mrs Trevino in return forwarded them to Plaintiff. (see Defendants Second supplement disclosure Exhibhit F.10-2-14 and 10-3-14)

Now plaintiff pointed out to the court as well as Defendants attorney,that the SECOND Dvd that was sent had been altered.

The first shows plaintiff being lifted off the floor and turned around thinking they were taking him to the infirmary which was about 60 feet away , by turning plaintiff around, he was then looking directly into the cameras. And it showed how beat up he was.

The SECOND DVD is of the same footage,but a totally different DVD. It too shows plaintiff being lifted off the floor and walking down the hallway toward F-pod. It had been altered. The part of plaintiff looking directly into the camera was missing. Defendants attorney was sent a total of 4 DVDs.She allowed plaintiff to view three. She has it seems only sent the court two. Where are the other ones?

Plaintiff still hasn't been allowed to view the 4th DVD and he is pretty sure it is of the one he was allowed to view in the fact finding investigation. And there is absolutly no reason why he shouldn't be allowed to view it the 4th one. By denying him access to the 4th DVD, defendants have effectively tied his hands and he cannot properly make his case. It shouldn't be up to the defendants attorney to determin what is 'too grainy' If TDCJ felt it was good enough to save then Plaintiff should have a chance to view it.

Mrs Trevino sent plaintiff 'grainy' photos,there should be no difference.

ARGUMENT

The standard for summary judgement is well settled. The moving party bears the burden of establishing that there are no genuine issues of material facts in dispute. This standard bars the court from resovlving disputed issues of fact. If there is material factual issues, the court must deny summary judgement. In evaluating whether there are factual issues, the court is to view in the non-moving party's favor. Anderson v. Liberty Lobby Inc, 477 U.S.242,247 (1986).

However, assessment of credibility, conflicting versions of events and weight to be assigned to evidence are for a jury, not the court.

A. Defendant Tollys attacks on Plaintiff violate the 8th Amendment. The 8th amendment prohibits the 'unnecessary and wanton infliction of pain' and is the sourse of claims of excessive force under section 1983. Whitley V. Albert, 475 U.S.312,319 (1986). Analysis

of excessive force claim contains both objective and subjective inquiries. An official's conduct violates the 8th Amendment when ;

1. The conduct is 'objectively, sufficiently serious' and;

2. The prison official acts with a 'sufficiently calpable state of mind'. Farmer V. Brennan 511 U.S 825,934 (1994). Plaintiffs statement and arguement clearly shows that there are genuine and critial issues of material facts for dispostion at trial.

(a) Tollys conduct was sufficiently serious.

The physical injuries and pshchological pain and suffering by Plaintiff were sufficiently serious to satisty the 8th amendment standard.

Plaintiff suffered a broken nose from the attack, two black eyes, busted lip a small tear on his left eye and multiple bruises all over his face. (see photo of plaintiff and DVD in Defendants motion for summary judgement).

(b) Tolly acted maliciously and sadistically to cause harm.

For claims of excessive force, the state of mind requirement turns on whether the prison official applied force 'maliciously and sadistically to cause harm' Hudson , 503 U.S at 6. (quoting Johnson v. Glick,481 F.2d. 1028,1033 (2d cir 1973). In making a determination, the trier of fact is to concider the folowing factors;

1. 'the extent of the plaintiffs injuries.';
2. 'the need for the application of force';
3. 'the correlation between that need and amount of force used',
4. 'the threat reasonably perceived by defendants';and ;
5. 'Any effort made by the dendants to temper the severity of force response.

Hudson v. McMillian 503 U.S.1.6-7. 112 S.Ct 995,999, 117 L.Ed.2d 156,165-66 (1992) at 7.

B. Defendants valentine evinced deliberate indifference when he failed to protect plaintiff from Tollys assault and accompanying death threats.

Defendant Valentine Argues summary judgement should be granted because;

1. He did not hear the threats or witness Tolly beat Plaintiff two possibly three different times in a course of 23 minutes. However Summary judgement is not appropriate because Valentine acted with Deliberate indifference when he failed to protect plaintiff from from Tollys physical assault and threats.

The legal standard is that a suppervisor may be liable under section 1983 for the actions of another officer where, as here, Valentine exhibits 'deliberate indifference' to a inmates safety. There is no requirement of participation in the constitutional violation. Deliberate indifference exists where;

1. there is a substantial risk of serious harm to an inmate. and

2. the prison official knows of the risk and disregards it by failing to take steps to preventharm to the inmate.

Famer v. Brennan 51 U.S 825,829 114 S.Ct. (1994)

(a) Plaintiff was at substantial risk of serious harm.

Here the first requirement for finding of deliberate indifference, 'substantial risk of serious harm' is clearly met.

A violent assault perpetrated after the need of force was overas plaintiff was successfully being restrained by Floyd and Valentine without justification and solely for the purpose of causing harm creats a substantial risk of serious harm.

(B) Valentine knew of and disregarded the harm to plaintiff by not acting to prevent it.

The second requirement of deliberate indifference,culpable intent is also met. The evidence establishes Valentine had knowledge that Plaintiff faced a substantial risk of serious harm on the day of December 29,2012. Regardless of whether Valentine actually heard the death threat or threat of harm. Valentine denies he withnessed or even heard Tolly beat or make such a threat to plaintiff.

Valentine also says plaintiff kicked him in the side of the head which footage will show is a lie.(See Defendants exhibit G. hard copy surveillance DVD)

Valentine also said he withnessed plaintiff spitting at Floyd and bit Floyd,which is a lie and also impossible,footage will

will clearly show from the postion of Floyds arm and plaintiffs head it would be impossible to bite anyone. Much less for him to 'witness it'. valentine futher says Plaintiff assaulted him, but yet Plaintiff recived no case for such a assault. (see exhibit C. Valentines Offense Report) Here Valentine makes no mention whatsoever of being assaulted, but yet files a injury report stating plaintiff kicked him in the side of the head. (See Photo Exhibit B.) Also (see Valentines employee participant statement 'Raby UOF of 17,18 & 19 Exhibit D.),stating he was kicked 'several times '. From the DVD plaintiff saw, Valentine wasn't kicked not once. And surely not in the head. (see Tollys Employee statement Exhibit E.) Tolly states that plainitff struck Valentine as he fell backwards. This is a lie. He futher states that he was on the floor, 'plaintiff struck him in'rapid' succession striking him in the HEAD, LEGS and ADOMINAL area). From the DVD Plaintiff saw,plaintiff did not strike Tolly in the HEAD,LEGs And Adominal areas. Footage will show plaintiff attempted to kick Tolly but Tolly blocks it. An attempt is not actual contact. These are just a few of the MANY things the defendants had fabricated in an attempt to justify the excessive force.

The Evidence futher establishes that Valentine disregarded the subtantial risk of serious harm that he knew plaintiff faced.
After the threat of death and more assault, valentine did nothing whatsoever,so it allowed Tolly to subject Plaintiff to more abuse that Valentine could had and should had stopped. Failure to intervene to prevent harm to an inmate constitues deliberate indifference, summary judgement should be denied where defendants were present but failed to intervene to prevent another prison official from beating plaintiff,a jury could find deliberate indifference for defendants failur to intervene. Defendant valentine had prior knowledge that plaintiff was exposed to MORE imminent serious harm. Here there is substantial evidence that Valentine dinregarded a clear and obvious risk of harm to Plaintiff. As a result plainitiff suffered futher

physical assault and threat of beating and death. Valentines failure to take any steps--much less any reasonable ones--to prevent this abuse makes him liable and at minimum,precludes Summary judgement in his favor.

The blatant and total disregard to plaintiffs attorney Preservation request to preserve ALL related footage, and a mere 1 minute should speak volumes. It isn't like plaintiff was requesting hours of footage. But to only preserve a mere 1 minute of a 23 minute event has now made it to where Defendants can say whatever they wish. This is spolitation. (see Docket No.48 Declaration by C. Cardon).

There was zero reason for Tolly to beat plaintiff who was handcuffed behind his back and being held down by two grown men,one time, much less five times that was capture on footage. It still leaves the question, how did plaintiff receive all the bruises to the right side of his face. The footage that would had shown this is now forever lost in the destroyed portion of the surveillance footage that should had been preserved as was requested. (see Docket No.48 Declaration by C. Cardon).
Turning this into their word against plaintiffs.

Plaintiff has also enclosed 3 pages of well established rules regarding Force, Accuratelly reporting UOF and what Conspriacy may include.(See Exhibit E). Plaintiff believes that he has shown conspriacy was committed in the false incident reports and false medical reports.

Defendants still claim force was justified, three grown men restrainng plaintiff who was handcuffed behind his back,face down to the floor BEFORE Tolly started beating plaintiff, is of no threat to anyone. So force was NOT justified. (see defendants Exhibit G, DVD), footage shows Valentine at plaintiffs waist,not 'holding his legs' to 'stop him from kicking' as he falsely states. That in itself show Plaintiff wasn't much of a threat face down handcuffed behind his back. Tolly beating plaintiff in the face was done so out of revenge and to inflict pain

and nothing more. So was the second and third attack,which defendants seem not to recall or even address, because they destroyed the footage that capture this. Defendants only talk of Plaintiffs 'left' side of his face,making no mention of the 'right' side, that many TDCJ officer would testify too. (See Defendants Exhibit G. DVD).

Force of this nature could be justified if plaintiffs hands were free to strik out. But this fact is,once they successfully rolled plaintiff onto the floor who is handcuffed behind his back, while being held down by two full grown men weighting over 200 pounds each, with a combind weight of over 400 pounds,surely no reasonable thinking person could view it as justified force. (see Defendants Exhibit G. DVD).

They have acted in bad faith by destroying footage that was very relevant to plaintiffs case that was requested to be preserved well within the 21 day time limit. (see Docket No. 48 Declaration of C.Cardon and Exhibits).

Their failure to obey the order of the court to disclose ALL relevant material, (the 4th and final DVD)also prejudiced plaintiffs ability to properly respond to defendants Motion for Summary judgment. Futhermore, Defendants only sending the court TWO of the THREE DVDs he was allowed to view, is an attempt to control the record.

The 4th and final DVD is in the possession of Mrs Afton Trvino, Defendants counsel of record,as she stated in the status conference call December 2014. Yet her reson for not sending it,'she felt it was "too grainy"'. Plaintiff strongly feels it is not for Mrs Trveino to make the determination what is or isn't "too grainy".

If the shoe was on the other foot, she would DEMAND to see ALL relevant information as was ORDERED by the court. As anyone in their right mind would.

Plaintiff would like to point to two last things. The statement(s) he gave have to substitute counsel whom took down plaintiff statement in her investigation where he told her everything from start to finish

is nowhere to be found in any of the papers that was sent to plaintiff.

NOR is the statement plaintiff gave to Major V.McMullin when he was called down to the office for a fact finding investigation. (see plaintiffs exhibit G) and (defendants exhitbit E) Plaintiff satetment was taken down by hand by Major McMullin. It was here to Plaintiff made his intentions known that he had contacted his attorney requesting footage of him in the dayroom,and all surveillance footage related to the UOF. Plaintiff here also asked McMullin to view the Surveillance of him in the day room,and was assured he would. Plaintiff told him it was NOT alcholo he was drinking,as well as he was thinking about suing Tolly.

So that is two of plaintiffs statements that were taken down that were also destroyed. They were part of the Preservation request. (see docket No 48) and (fact finding UOF Report exhibit G.)

CONCLUSION

For the foregoing reasons, defendants Motion for Summary Judgement should be denied.

"A genuine issue as to these facts exist and must be allowed to be decided by the trier-of-fact at trial."

Spolitation at every stage has been committed.

1. Failure to preserve all relevant surveillance footage.
2. Failure to preserver the Medical examination from Dec 30,2012. (DVD)
3. Failure to preserve statements made by plaintiff.
4. For altercation of the SECOND DVD of UOF videp.
5 They are in violation of discover ORDER, by not allowing Plaintiff to view the 4th and final DVD.

Respectfully Submitted

Charles D. Raby, pro se.

Charels Raby
#999109
Polunsky Unit
3872 FM 350 South
Livingston Tx 77351.

WEEL ESTABLISHED TDCJ RULES, TEXAS LAW, AND FEDERAL LAW.

1. See 'Professional Rules of Conduct "P-D.22" TDCJ website.

2. See. Tx Code of Criminal Procdure, Ch 1 'general provisions art.1.09. "crulety forbidden", (excesive bail shall not be required, nor excessive fines, 'nor crule and unusual punishment inflicted'). also see, (Tex Const Art 1§13.).

3. TDCJ Use Of Force Plan, quoting "Hudson v. McMillian 503 U.S.Ct (1992) Pg 1. www. tdcj.texas.gov

4. United States Const 8th amendment. 'Crule and unusual punishment'.

CERTIFICATE OF SERVICE

I, Charled D. Raby, certify that I have informed Defendants counsel of Record the copy is not a true copy with all the exhibits attached to their copy, plaintiff only has one copy of exhibits to attach and sent those along with Response to the court, of PLAINTIFFs RESPONSE TO DEFENDANTS MOTION FOR SUMMARY JUDGEMENT, has been served be placing it in the United states mail,postage prepaid on 17 day of February 2015, addressed to:

Mrs Afton Trevino
Assistant attorney general
P.O. Box 12548
Austin Tx 78711-2548

Charles Raby

Charles Raby,Pro Se.

19 February 2015

Re: Raby V Tolly et al
Civ action No 9:13-cv-00120

Dear Mr Maland

Hello Sir, I have enclosed for you to file with the court my presonse to Defendants motion for Summary Judgement, with exhibits.

As well as a letter to defendants counsel of record Mrs Afton Trevino.

And lastly, a letter to the court.

Thank you for your time in this matter.

respectfully
Charles Raby
Charles D. Raby, pro se.

Re: Raby V. Tolly et al
civ action No 9:13-cv-00120

To; Honorable Judge Zack Hawthorn

Sir, I want to strees to the court that defendants are still in direct vioaltion of the courts order to disclose ALL relevant information. Defendants are still in possession of a 4th DVD which they are refusing to allow me to view, saying it is 'too grainy'.

I resepctfully object to this tatict by Mrs Trevino, counsel of record to control the evidnece and record.

Sir, once again, if TDCJ felt it was good enough for forward to TDCJ General counsels office per TDCJ policy. Then there is zero reason for Mrs Trevino to deny me access to view it. It is just one last DVD she has amitted to having in her possession for surveillance cameras that captured the UOF.

As i have informed you Sir, I strongly believe this is the one that I was allowed to view in the Fact Finding Investigation. And if so, it could possibly be a recording of the WHOLE incident from the 'frontal view'.

If there is nothing incriminating on there, then defendant have absolutely nothing to fear in releasing it to me for viewing.

i futher want to stress that Mrs Trevino has only sent the court two (2) of the DVDs,out of the three (3) she has thusfar allowed me to view.

Mrs Trevion was sent two (2) DVDs from the Polunsky unit early 2014. and then sent two more from TDCJ Office of General Counsel. a total of 4 DVDs
I filed a second motion to compel to view the 4th and last DVD in her possession, a days or so before the court issued the order for Summary Judgement. (see docket # 54 and 55).

I was under the impression that I was going to be aforded a chance to view the DVDs a again so i could properly respond to summary judgement

Since I have not been allowed to, i have done the best I could with the limited amount of time I was allowed to view them.

Thank you for your time in this Sir.

Respectfully submitted.
Charles D. Raby, pro se.

17 February 2015

RE: Raby v Tolly et al
Civil Action No 9:13-cv-00120

Dear Mrs Trevino

Hello. Please find encolosed my response to your motion for summary judgement.

However, please note this is not a complete copy, there are no exhibits attached to yours, I only have one copy of the exhibits to attach and those will go to the court. You should be able to read and see them on the docket

I also want to take this time to inform you, I believe you are in direct violation by not allowing me to view the 4th DVD in your possession that you said was 'too grainy'. If TDCJ felt it was good enough to forward to TDCJ General counsels office, then it should be good enough for me to view as well.

I do not feel you should be the one to make the determination as to what is 'too grainy' for viewing. It was preserved as Evidence, therefore it IS evidence. If the shoe was on the other foot, you would DEMAND to see it. As I am.

If there is nothing incriminating on there, then you have nothing whatsoever to fear by allowing me to view it.

I have also noticed that you only sent two of the THREE DVDs that you allowed me to view to the court. I am requesting you send the 3rd one as well.

The Polunsky Unit sent you two (2) DVDs, one of which you refused to allow me to view, even after the court ordered you to disclose ALL relevant information.

Then you sent two (2) more DVDs form TDCJ General Counsel.
2+2=4.

I am forwarding a copy of this letter to the court as well.
Thank you for your time.

Respectfully
[signature]
Charles D raby, pro se.

CC.

Copy

Charles Raby 999100
Polunsky Unit
3872 FM 350 South
Livingston TX 77351




To: David Maland
U.S. District Clerk
U.S. District Court
104 N. Third ST
Lufkin TX 75901